# Tennessee and Coosa Railroad Company *v.* East Alabama Railway Company.

*Ejectment for Recovery of Railroad.*

1. *Ejectment for recovery of a railroad; when description in complaint not sufficient.*—As the mere survey and location of the line of a railroad, made twenty-five years ago, can not be supposed to have left such visible marks as would enable one to trace it without the aid of the engineer's report and chart, even if it could be done with such aid, such a descrip-
tion in the complaint in an action of ejectment, brought to recovor the track or road-bed of the railroad, without more, is too indefinite, and is, therefore, insufficient to authorize a recovery.

2. *Same.*—Nor is the description, in such complaint, of that part of the right of way lying outside of the graded track sufficient to authorize a recovery thereof, when its dimensions are not given.

3. *Same; when description sufficient.*—Where, however, the aver-
ments of the complaint show that the railroad track was not only sur-
veyed and located, but was cleared of timber and graded, with excava-
tions and embankments, and a superstructure, over which locomotives
and cars were running, and that it extended from one given point to
another, and was the only railroad between those points, the description
is sufficient to authorize a recovery.

[Tenn. and Coosa R. R. Co. v. East Ala. R'y Co.]

4. *Ejectment; will lie for recovery of road-bed and right of way of railroad.*—While, as a general rule, ejectment will not lie for an easement, or to be let into the use or occupation of a servitude, it will lie for the recovery of lands claimed and condemned as the road-bed and right of way of a railroad.

5. *Same; when plaintiff's title can not be disputed.*—Where a defendant in ejectment acquires his possession, and the title he asserts, derivatively from the plaintiff, he can not be heard to dispute the latter's title.

6. *Sale by assignee in bankruptcy under bankrupt law of 1867; authority to make.*—The authority of an assignee in bankruptcy to sell the property of the bankrupt under the bankrupt law of 1867, may be reduced substantially to two methods : First, a sale without an order of court, in which case the assignee sells simply the unascertained interest of the bankrupt, leaving to the purchaser the right and duty of settling and determining all controversies as to disputed ownership, and all litigation that may grow out of such disputed ownership; and second, a sale of the entire property, and the entire title to it, freed from all conflicting claims and liens, under section 5063 of the U. S. Rev. Statutes, thereby placing and leaving its proceeds in its stead, as the subject of contention and litigation; and between these two methods there is no middle ground, to which the assignee is authorized to resort.

7. *Same; when sale does not conform to § 5063 Rev. Statutes; limitation under § 5057 of Rev. Statutes.*—Where, on the petition of an assignee in bankruptcy, a decree is made in the bankrupt court, recognizing and establishing the priority of the lien of a creditor who is alone made a party to the petition, and directing a sale of the bankrupt's property subject to that lien, but freed from all other liens, a sale made under such decree does not conform to the provisions of section 5063 of the U. S. Rev. Statutes; and a claimant of part of the property sold, who was not made a party to the petition, and who had no notice of the proceedings, is not barred under the provisions of section 5057 of the Rev. Statutes, because he did not, within two years, prefer his claim in the bankrupt court.

8. *Property of bankrupt; interest of assignee in.*—Where the property of a bankrupt has not been conveyed in fraud of his creditors, the assignee in bankruptcy takes no greater interest in, or better title to it, than the bankrupt himself had.

9. *Possession of vendee under executory contract of purchase; when an estoppel.*—Where a party goes into possession of real estate under an executory conract of purchase, he is estopped from disputing his vendor's title; and, on his being declared a• bankrupt, his assignee, standing in his shoes, is equally estopped.

10. *Bankruptcy; limitation of two years under § 5057 Rev. Statutes.* Section 5057 of the Rev. Statutes applies the two years bar to suits "touching property or rights of property transferable to, or vested in the assignee," and extends no further; and hence, where the bankrupt had no property or right of property in the subject of litigation, it neither vesting in nor being transferable to the assignee, the provisions of the statute do not apply.

ALPEAL from Etowah Circuit Court.

Tried before Hon. H. D. CLAYTON.

The facts are stated in the opinion.

W. H. DENSON, with whom was SAM'L F. RICE, for appellant.   (1) The road-bed, track, etc., of a railroad company is real estate, and•for its recovery an action of ejectment will lie.

[Tenn. and Coosa R. R. Co. v. East Ala. R'y Co.]

This point discussed at length, with citation of following authorities: Tyler on Eject. 37, 39; 3 Wait's Ac. & Def. 4, §§ 1, 2 *et seq.;* 1 Chitty's Plead. (16 Am. Ed.) m. pp. 275–6; *Rowan v. Kelsey,* 18 Barb. 484; *Nichols v. Lewis,* 15 Conn. 137; 1 Wash. Real Prop. (4th Ed.) pp. 2–3, §§ 2, 2a, 3, and note, m. p. 32, § 36; *S. & N. R. R. Co. v. Pilgreen,* 62 Ala. 305; *Luke v. Calhoun Co.,* 52 Ala. 115; *Smith v. Gayle,* 58 Ala. 600; *Dummer v. The Selectmen, etc.,* 40 Am. Dec. 213; *Central Pac. R. R. Co. v. Benity,* 5 Sawyer, 118; *Hazen v. B. & M. R. Co.,* 2 Gray, 574; *Winona v. Huff,* 11 Minn. 119; *Mankato v. Willard,* 13 Minn. 13; *Jackson v. R. & B. R. R. Co.,* 25 Vt. 150; *C. & P. R. R. Co. v. Holton,* 32 Vt. 47; *T. & B. R. R. Co. v. Potter,* 42 Vt. 265; *R. Co. v. Davis,* 2 Dev. & Bat. 467; *Giesey v. C., W. & Z. R. R. Co.,* 4 Ohio St. 308; *Hoboken Land Co. v. Hoboken,* 36 N. J. Law, 540; *Klinkener v. School Directors,* 1 Jones (Penn.), 444; *Turner v. Reynolds,* 11 Harris (Penn.), 199; *Chicago v. Wright,* 69 Ill. 322; *Mahon v. San Rafael T. R. Co.,* 49 Cal. 270; *Cincinnati v. White,* 6 Pet. 431; *M. & O. R. R. Co. v. Williams,* 53 Ala. 597; *Tanner v. S. & N. R. R. Co.,* 60 Ala. 635; *M. & M. R. R. Co. v. Blakey,* 59 Ala. 471; *Cook v. Central R. R. Co.,* 67 Ala. 541; *Kennedy v. Jones,* 11 Ala. 63; *Jackson v. Buel,* 9 Johns. 298. (2) This suit was not barred by the provisions of section 5057 of Revised Statutes (U. S.). Bankruptcy proceedings are entirely statutory; and no authority can be exercised in bankruptcy by the court, by the assignee, or by any other person, than such as is conferred by the statute.—*Glenny v. Langdon,* 98 U. S. 29; *Gifford v. Helms,* 98 U. S. 252; *Shaw v. Lindsey,* 60 Ala. 351; *Nat. Bank v. U. S.,* 107 U. S. 450; *Feibleman v. Packard,* 109 U. S. 421; *Paulding v. Lee,* 20 Ala. 765. In order that section 5057 of Rev. Statutes may apply in any case, there must be a concurrence of three conditions: 1st. The controversy must be in respect to some property or rights of property of the bankrupt; 2d, such property must be transferable to, or vested in such assignee; and 3rd, the suit must be in the name of one of the two parties named in the act.—*Glenny v. Langdon, supra; Gifford v. Helms, supra; Marshall v. Knox,* 16 Wall. 556; *Smith v. Mason,* 14 Wall. 431; *Morgan v. Thornhill,* 11 Wall. 75; *Jenkins v. Bank,* 106 U. S. 574; *Moses v. St. Paul,* 67 Ala. 171. (3) Neither party claims under any bankrupt proceedings; no title of an assignee is involved in this action; and no property of a bankrupt is litigated in this suit. The deed executed by the appellant to the East Alabama & Cincinnati R. R. Co. was construed by this court in *Tennessee & Coosa R. R. Co. v. East Alabama R. Co.,* 73 Ala. 426; and it was then held that the conditions contained in the deed

[Tenn. and Coosa R. R. Co. v. East Ala. R'y Co.]

were *precedent;* and the grantee having failed to perform them, no title to the property ever vested in the grantee under said deed.—See *Cowell v. Springs Co.*, 100 U. S. 55. At the time of the bankruptcy of the E. A. & C. R. R. Co., there had been a failure to perform some of the conditions of said deed; and the appellant then had the right to enter and retake its property for condition broken. The bankruptcy of the grantee made it impossible for it to perform said conditions, thereby, *ipso facto*, devesting the grantee of all claim to, and possession of said property.—*Nichol v. Eaton*, 91 U. S. 716. Prior to the commencement of this action, the appellant made its entry for condition-broken; and when it entered, it was in of its former estate and title, free from all intervening estates, titles, liens and incumbrances, whether created by law, or by the grantee itself.—4 Kent. m. pp. 126–7; *Cross v. Carson*, 44 Am. Dec. 757, *note;* Tyler on Eject. 179–80; *Collins v. Whigham*, 58 Ala. 438; *Morris v. Beebe*, 54 Ala. 308. The appellee does not set up any claim or title to the property under any proceedings in bankruptcy, or under any assignee in bankruptcy. It claims under the foreclosure proceedings had in the chancery court of Lee county. In the proceedings in bankruptcy, the rights of the trustees, Barnes & Clews, were expressly reserved unimpaired. The purchasers at the assignee's sale were the only parties defendant in the foreclosure proceedings; and they there set up all their claim and title to said property derived from the proceedings in bankruptcy, and the chancery court decided against them, and ordered the property sold; and the appellee claims under the purchasers at that sale. See *Kelly v. A. & C. R. R. Co.*, 58 Ala. 489; *Colt v. Barnes*, 64 Ala. 108. To the chancery suit the appellant was not a party. The chancery court having decided adversely to the purchasers at the assignee's sale, the title of the assignee and of the purchasers at his sale is extinct, and they are estopped from setting up their claim and title to said property in any other suit or court.—*Davis v. Friedlander*, 104 U. S. 570. The appellee, then, would certainly be estopped from setting up that title. (4) The bankrupt's title to said property was not such as was transferable to, or became vested in the assignee. The E. A. & C. R. R. Co. was only an executory purchaser, and was estopped from denying or disputing the appellant's title.—*Potts v. Coleman*, 67 Ala. 221; *Cowell v. Springs Co.*, 100 U. S. 55; Walker v. Reister, 102 U. S. 470; *Lewis v. Hawkins*, 23 Wall. 119; *Cook v. Tullis*, 18 Wall. 332; *Burnett v. Caldwell*, 9 Wall. 290; *Henley v. Bank*, 16 Ala. 552; *Seabury v. Easton*, 22 Ala. 207; *Relfe v. Relfe*, 34 Ala. 504; *Chapman v. Glassell*, 13 Ala. 50; *Strong v. Waddell*, 56 Ala. 471. It is settled law, that the assignee can assert no

claim to the property which the bankrupt himself could not assert in a contest between it and the appellant. As to every thing, except fraudulent conveyances and preferences under the bankrupt law, the assignee takes by the assignment as a purchaser from the bankrupt, with notice of all outstanding rights and equities. Whatever the bankrupt could do to make the assigned property available for general creditors, the assignee may do; *but nothing more.—Stewart v. Platt,* 101 U. S. 739; *Dudley v. Easton,* 104 U. S. 99; *Hanselt v. Harrison,* 105 U. S. 406; *Smith v. Perry,* 56 Ala. 266. The assignee takes and holds the property in the same condition in which the bankrupt held it, and subject to the same liens and incumbrances. The bankrupt law takes away no right secured to a party by his contract.— *Yeatman v. Sav. Inst.,* 95 U. S. 764; *Jerome v. McCarter,* 94 U. S. 734; *Eyster v. Gaff,* 91 U. S. 521; *Cook v. Tullis,* 18 Wall. 332. See also *Dudley v. Easton,* 104 U. S. 99; *McHenry v. La Societe, etc.,* 95 U. S. 58; *Walker v. Reister,* 102 U. S. 467. (5) The appellant was not a party to any of said bankrupt proceedings; its title to said property was never litigated in said court; and, hence, it is bound by none of the proceedings in said court.— *Ray v. Norseworthy,* 23 Wall. 128; *Smith v. Mason,* 14 Wall. 432; *Marshall v. Knox,* 16 Wall. 555; *Dupasseur v. Rochereau,* 21 Wall. 130; *Shaw v. Lindsey,* 60 Ala. 351. (6) The bankrupt law operates only upon property belonging to *the bankrupt,* and which is liable to the payment of his debts; and it is only such property that is transferable to, or vests in the assignee within the purview of section 5057 of Rev. Statutes.— *Porter v. Lazear,* 109 U. S. 84; *Nat. Bank v. U. S.,* 107 U. S. 445; *Rhoades v. Blackiston,* 8 Am. Rep. 334; *Harris v. Collins,* 13 Ala. 388; 3 Par. on Con. 472 *et seq.; Jones v. Clifton,* 101 U. S. 225; *Marsh v. Armstrong,* 18 Am. Rep. 355. The bankrupt law does not prescribe the title or interest the bankrupt must have in the property to make it subject to the bankrupt's debts; but leaves this entirely with the States.— *Brine v. Ins. Co.,* 96 U. S. 627; *Equator Co. v. Hall,* 106 U. S. 86. In this State, the real estate of a debtor, liable to his debts, is such as he has the legal title to, perfect equity in, or in which he has a *vested legal* interest.—Code, 1876, 3209. Under the decision of the case in 73 Ala. *supra,* p. 426, the E. A. & C. R. R. Co. never had any such title or interest in this property. It was, therefore, not transferable to, nor did it vest in the assignee.

BARNES & SON and SEMPLE & SON, with whom were DUNLAP & DORTCH, *contra.* (1) The description in the complaint is insufficient to support a verdict and judgment. It is obvious that the sheriff could not, from the complaint alone, or from it

[Tenn. and Coosa R. R. Co. v. East Ala. R'y Co.]

aided by any measurement or plat referred to in it, have found the subject-matter of the suit. This point argued at length, and the following authorities cited and discussed: Code, 1876, § 2960; *Henley v. Branch Bank*, 16 Ala. 559; *Sturdevant v. Murrell*, 8 Port. 317; *Bennett v. Morris*, 9 Port. 171; *Chapman v. Holding*, 60 Ala. 522; 69 Ala. 342. (2) The facts of this case constitute a complete defense under the terms of the Bankrupt Act, which forbids a suit by or against the assignee for any property transferable under the act, except within two years. This point discussed at length, and the following authorities cited and commented upon, in argument: U. S. Rev. Stat. §.5057; *Moses v. St. Paul*, 67 Ala. 168; *Comegys v. McCord*, 11 Ala. 932; *Harris v. Collins*, 13 Ala. 388; *Paulding v. Lee*, 20 Ala. 753; 102 U. S. 469; *Long v. Converse*, 91 U. S. 105; *Wilson v. Glenn*, 68 Ala. 383; *Jenkins v. International Bank*, 106 U. S. 571; *Pike v. Lowell*, 32 Me. 245.

STONE, J.—The present is an action of ejectment, brought by the appellant as plaintiff, and seeks to recover what is described in the complaint as "the following real estate, that is to say, the track or road-bed of the plaintiff as the same was located at and before July 12th, 1871, from Gunter's landing, in Marshall county, in the State of Alabama, to Gadsden, in Etowah county, in said State, together with all their right of way, grading, trestles, masonry work, culverting work, and property on said line so located, including the railroad from Gadsden to Attala, in said county of Etowah, which railroad is the only railroad from Gadsden to Attala, and is attached to the soil, and is now, and was at the commencement of this suit, used and operated as a railroad by the employees of the defendant corporation, and by the direction and authority of that corporation, and including also the appurtenances of said railroad from Gadsden to Attala. The plaintiff further avers that at and before June 3rd, 1856, it was organized and in existence as a corporation under and by virtue of its charter contained in an act of the General Assembly of the State of Alabama, entitled 'An act to incorporate the Tennessee and Coosa Railroad Company, approved January 16th, 1844;'" a copy of which act was made part of the count. See Pamph. Acts, 1843–4, pp. 170 to 175. The complaint further averred "that long before June 3rd, 1856, the said railroad and railroad track and bed of plaintiff, as described in this complaint, had been located as stated in this complaint, and that said railroad of plaintiff was and is the same railroad which is first mentioned in the act of Congress, entitled 'An act granting public lands in alternate sections to the State of Alabama, to

aid in the construction of certain railroads in said State,' approved June 3rd, 1856. And plaintiff further avers that at the time of said location of its said railroad and railroad track and bed, there were public lands of the United States, designated by odd numbers, not previously sold, nor covered or claimed by any preemption claim, on and along the said railroad and railroad track and bed, some of which public lands were situated between Gadsden and Attala aforesaid.       .       .       .       .
And plaintiff avers that its said railroad, and railroad track and railroad bed, as located as aforesaid betwen Gadsden and Attala,       .       .       .       .       was upon parts and parcels of some of said odd numbered sections of said public lands, upon and over which the plaintiff had the right to locate its said railroad, railroad track and railroad bed, and did so locate the same in the lawful exercise of its right."

By various rulings in the court below, the contention was narrowed down to that section of the road, about five miles in length, extending from Gadsden, the southern terminus of plaintiff's chartered line, to Attala, all in Etowah county. Hence, we have omitted several averments, not deemed material to the present investigation. The complaint contains the usual averment of ouster and possession by the defendants, and claims damages.

There was a second count, containing averments not found in the first, as follows : " The plaintiff, on and before the 12th day of July, 1871, had, and ever since has had the legal title and the legal ownership of the following realty [describing the property as described and sued for in the first count], and is upon the ground and soil, and upon the aforesaid right of way of the plaintiff, and is the property of the plaintiff.       .       .       .       .       And plaintiff avers that its aforementioned legal title to, and ownership of all the property above described, was acquired by the plaintiff lawfully and properly, but without the exercise of any power to cause the condemnation of lands to the use of a railroad, or to any public use ; and without the exercise of any other compulsory power, authorized by the law of Alabama, and without any other means than the lawful and voluntary acts and conduct of those who were the owners of said property, until it became the property of the plaintiff."

In setting forth the counts, as given above, we have described them as they were finally framed, after all the amendments were allowed. Under the plea to the jurisdiction, filed by the defendants, the court required the plaintiff to strike from the complaint all of the property claimed, which lay in Marshall county. The circuit court also ruled, that with the exception of the five miles of road extending from Gadsden to Attala, the description of the property given in the complaint is too

indefinite to authorize a recovery. In this way the controversy was narrowed to the completed section between those places.

Several grounds are urged by appellee, why the ruling of the circuit court should not be disturbed. First, that the description of the property sued for is too indefinite, and fails to give such information that the sheriff would know of what to put the plaintiff in possession, if he recovered. As we understand the complaint, there is a marked difference in the description of that part of the road which lies between Gadsden and Attala, and that which undertakes to describe the residue of the route. The description of the latter portion must be classed with those held insufficient in *Sturdevant v. Murrell*, 8 Por. 317, and *Bennet v. Morris*, 9 Por. 171. There is nothing in the description, without additional facts not given, which would inform the defendant of what was claimed, or the sheriff, what he was required to put the plaintiff in possession of. The mere survey and location of the line of a railroad, without more, made twenty-five years ago, can not be supposed to have left such visible marks, as to enable one to trace it, without the aid of the engineer's report and chart, even if it could be done with such aid. See *Alexander v. Wheeler*, 69 Ala. 332.

The description of that part of the road from Gadsden to Attala is entirely different. It is so described that its identity can not be easily mistaken. A railroad track, not only surveyed and located, but cleared of timber and graded, having excavations and embankments, extending from one given point to another given point, and being the only such road between those points, it would seem the sheriff would have no difficulty in finding. And when, in addition to these, there is a superstructure, and locomotives and cars running over the track, assurance is made doubly sure.—*Henley v. Branch Bank at Mobile*, 16 Ala. 552; *Chapman v. Holding*, 60 Ala. 522. The description of what is called the right of way—that area of the servitude which lies outside of the graded track—is not sufficient. Its dimensions should have been given, as a guide to the jury, and to the officer executing the writ of possession.

It is objected in the next place, that plaintiff has not sufficient property in the realty to maintain ejectment; that plaintiff has only an easement, and no title to the soil; and that ejectment will not lie for the recovery of an easement.

It is true that ejectment will not lie, as a general rule, for an easement, or to be let into the use or occupation of a servitude. The reason is that the party complaining has only a right in common with the public, or with some other person or persons, to the use or occupation claimed. The right is a qualified, limited one, and, in ordinary cases, is not disturbed by another's

similar occupation. It is but a privilege to go on the lands of another for a specified, limited purpose, and has no element of exclusiveness in it. A right of way, or of common, may be given as illustrations of this principle.—Washb. on Easements (3d Ed.), 3,260,270; *Child v. Chappell,* 9 N. Y. 246; *Morgan v. Boyes,* 65 Maine, 124; *Rees v. Lawless,* 12 Amer. Dec. 295. There are cases which go beyond this doctrine.— *Wood v. Truckee Turnpike Co.,* 24 Cal. 474; *Union Canal Co. v. Young,* 30 Amer. Dec. 212; 2 Wait's Ac. & Def. 747; 2 Redf. Rw'y, 553.

Lands claimed and condemned as road-bed and right of way of a railroad stand in a different category from that of ordinary easements. Over them is acquired, not the right of use to be enjoyed in common with the public, or with other persons. The right and use are exclusive, and no one else has any right of way thereon.—*M. & O. R. R. Co. v. Williams,* 53 Ala. 595; *M. & M. Rw'y Co. v. Blakely,* 59 Ala. 471; *Tanner v. L. & N. R. R. Co.,* 60 Ala. 621; *S. & N. R. R. Co. v. Pilgreen,* 62 Ala. 305: *Cook v. Cen. R. R. & Banking Co.,* 67 Ala. 533; *R. & G. R. R. Co. v. Davis,* 2 Dev. & Bat. (Law) 451; *Jackson v. R. & B. R. R. Co.,* 25 Vt. 150; *T. & B. R. R. Co. v. Potter,* 42 Vt. 265.

Ejectment was originally classed as a possessory action. Hence it was, that, at common law, any number of actions could be maintained, by laying the demise at a later date. One recovery was only conclusive as to one and the same demise. A right to the immediate possession, in form legal as distinguished from equitable, would always maintain the action, and it will yet. Prior possession is sufficient against any one afterwards found in possession, unless the latter can show a paramount title, or a possession continuous, peaceable and adverse, of sufficient duration to toll entry.—Tyler on Ejectment, 70; *Ib.* 165; *Anderson v. Melear,* 56 Ala. 621. A lessee or termor, during the continuance of a valid lease, may maintain the action against the lessor, although the owner of the entire fee, less the term. So, the title of a railroad corporation to the possession of the soil covered by the road-bed and right of way, will, after condemnation, dominate all adverse claim of possession, even by the owner of the fee. "Although the right which a railroad company acquires to land taken under their charter, is said to be merely an easement, yet the nature of their business, their obligations to the community and the public safety require that the possession of the land so taken should be absolute and exclusive against the adjacent land-owner, so far as to secure fully every purpose for which the railroad is made and used."—*Conn. & Pass. River R. R. Co. v. Holton,* 32 Vt. 43. "One who has the exclusive right to

mine coal upon a tract of land, has the right of possession as against the owner of the soil, so far as it is necessary to carry on his mining operations."—*Turner v. Reynolds*, 23 Penn. St. 199, 206. "The right of municipal corporations, or public authorities vested with no higher estate than a public easement, or right by dedication, to invoke the remedy of ejectment, for the possession of streets, public squares, town commons, church and market grounds, is upheld in many cases."—Sedg. & Wait, Trial of Title to Lands, § 271. See also *Jackson v. May*, 16 Johns. 184; *Winona v. Huff*, 11 Min. 119; *Cincinnati v. White*, 6 Pet. 431; *Dummer v. Jersey City*, 40 Amer. Dec. 213; *Hoboken Land Co. v. Mayor*, 36 N. J. (Law) 540; *Doe ex dem v. Booth*, 2 Bos. & Pul. 219; 3 Wait's Ac. & Def. 6, 7. In the following cases will be found a curious discussion, tending strongly to show that the road-bed and superstructure—in fact, every thing attached to the soil, on which a railroad is built—are considered realty.—*Randall v. Elwell*, 52 N. Y. 521 (s. c. 11 Amer. Rep. 747); *Hoyle v. P. & M. R. R. Co.*, 54 N. Y. 314 (s. c. 13 Amer. Rep. 595). And there is certainly much reason for the opinion. The road-bed and right of way are as immovable as the soil itself, the superstructure is attached to the soil, and the corporation has the exclusive right to the possession of it. In *Central Pacific R. R. Co. v. Benity*, 5 Sawyer, 118, the precise question we are considering was presented, and the court, Circuit Justice Sawyer participating, decided the action of ejectment would lie. So we hold it will lie in this case.

If it be contended for appellee that the Tennessee and Coosa Railroad Company is not shown to have ever acquired any right to the property sued for, shows no legal right to it, and therefore can not maintain this action, the answer is, the main defendant, on whose title all the defendants rely, acquired its possession and all the claim it asserts, derivatively from the plaintiff, and can not be heard to dispute its title.—Tyler on Ejectment, Ch. 9, p. 165; *Houston v. Farris*, 71 Ala. 570.

The East Alabama and Cincinnati Railroad Company obtained a charter for constructing a railroad, extending from Eufaula, in Barbour county, to Gunter's Landing, sometimes called Guntersville, on the Tennessee river, and in Marshall county. This company organized, and, proposing to obtain the State's indorsement of its bonds, executed to trustees a trust deed of all its property then owned, or afterwards to be acquired, to indemnify the State against loss by virtue of such indorsement. It issued its bonds, which, being indorsed by the State, were negotiated for funds with which to prosecute the construction of its road. The Tennessee and Coosa Railroad Company had previously obtained a charter for a railroad, extending from

Gadsden, on the Coosa river, to Gunter's Landing, being in the route, and extending part of the distance from Eufaula to Gunter's Landing. This older company, extending from Gadsden to Guntersville, had surveyed and located its route, and had done some grading, masonry and other work along its line, but had laid no rails. Work was suspended for want of funds. At this stage of its progress, and after the said trust deed of the East Alabama and Cincinnati Railroad Company had been executed, an agreement of bargain and sale was entered into between the two corporations, by which the Tennessee and Coosa Railroad Company contracted to sell to the East Alabama and Cincinnati Railroad Company, its entire unfinished railroad, with all its property. That contract bears date July 12th, 1871. In the case of *Tennessee and Coosa Railroad Company v. East Alabama Railway Company*, 73 Ala. 426—a chancery suit—we construed that contract of sale, and held that the conditions in the contract are what are called precedent, and that the title to the railroad and its property, as between the contracting parties, did not pass by that instrument, by reason of the non-performance of the conditions. In that case, and in *Colt v. Barnes*, 64 Ala. 108, will be found a statement of many of the facts, which go to make up the history of this case.

In 1873, the East Alabama and Cincinnati Railroad Company was declared a bankrupt, assignees were appointed, and the property of the bankrupt was vested in them as such assignees. They sold the property to Murphy and others, and made them a deed of conveyance. Under this purchase, Murphy and his associate purchasers took possession of the property of the East Alabama and Cincinnati Railroad Company, and with it that portion of the Tennessee and Coosa Railroad which had been completed and was being operated by the bankrupt corporation, under its purchase of July 12th, 1871. They retained possession for two or more years, until dispossessed by the chancery suit of Barnes and Clews, trustees, to foreclose the trust deed given to secure the State and the bondholders. See *Colt v. Barnes*, 64 Ala. 108—the report of that case. Under that suit the entire effects of the East Alabama and Cincinnati Railroad Company were sold, and the appellee in this case—the East Alabama Railway Company—became the derivative purchaser, asserting title under said sale and purchase. The said purchasing company claims, as part of its said purchase, the property, road-bed, right of way and superstructure of the Tennessee and Coosa Railroad Company, and has had possession of it since said purchase; the actual possession being only of that section, extending from Gadsden to Attala.

In the suit by Barnes and Clews, trustees, to foreclose the trust deed, no special, separate mention is made of that section

of the railroad track which was acquired from the Tennessee and Coosa Railroad Company, nor was the latter named corporation made a party to the suit. The defendant corporation purchased the entire property, road-bed, right of way, and every thing else belonging to the East Alabama and Cincinnati Railroad Company, and claims that the property in controversy in this suit is part of that property.

It is contended for appellee that, under the bankruptcy of the East Alabama and Cincinnati Railroad Company, the bankrupt court and its assignees took control and possession of the property in controversy, as of the assets of the bankrupt, that under a petition filed in that court for the purpose, the bankrupt's estate, including the property herein sued for, was sold and conveyed to Murphy and his associates, that they took possession under their purchase, and that plaintiff is barred under section 5057 of the Revised Statutes of the United States, because it did not prefer its claims within two years, and in that court.

The present record does not contain the petition filed by the assignees in the bankrupt court, under which they obtained the order of sale. The order of the district court, authorizing the sale, is in the record, and it recites the substance of the petition, and sets forth the parties to it. The recital is, that the assignees, naming them, were the petitioners, and that Barnes and Clews, the trustees in the deed of trust, were alone made defendants. They accepted service, and "consented to the hearing of said petition, and to a sale, as prayed therein, of the franchises and property of the said East Alabama and Cincinnati Railroad Company." The court thereupon ordered, "that the lien of the State of Alabama, and the mortgage or deed of trust of date July 1st, 1870, . . to secure the State of Alabama against her indorsement of the first mortgaged bonds of said railroad company, and the holders and owners of said first mortgaged bonds, . . . be, and the same is hereby in all things recognized and established, as a prior lien on the franchise and property, real and personal, of said railroad company." The decree then directed a sale of said property, "subject to the prior lien aforesaid in favor of the State of Alabama, and the holders and owners of the first mortgaged bonds, . . and that the entire road, its franchises and property, . . be sold by said assignees, free from all other liens except the lien aforesaid in favor of the State of Alabama and the holders and owners of said first mortgaged bonds." The decree then directed that the sale be reported to, and the proceeds be brought into the court. Under this order, the East Alabama and Cincinnati Railroad, its franchise and property, were sold and conveyed to Murphy and his associates. This is the proceeding in which it is con-

tended the Tennessee and Coosa Railroad Company should have intervened and asserted its claim, and failing to do so for two years, it is barred.

The authority of the assignee to sell the property of the bankrupt under the bankrupt law of 1867, may be reduced substantially to two methods: First, a sale without an order of court, in which case the assignee sells simply the unascertained interest of the bankrupt, leaving to the purchaser the right and duty of settling and determining all controversies as to disputed ownership, and all litigation that may grow out of such disputed ownership. Section 5063 of the Revised Statutes provides a second method. Its language is: "Whenever it appears to the satisfaction of the court that the title to any portion of an estate, real or personal, which has come into possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent or attorney, as the court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds received in place of the estate disposed of; and the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any court. But this provision shall not prevent the recovery of the property from the possession of the assignee, by any proper action commenced at any time before the court orders the sale." It is manifest, from a perusal of this section, that it contemplates a sale of the entire property, and the entire title to it, freed from all conflicting claims and liens, and to place and leave its proceeds in its stead, as the subject of contention and litigation. Hence, it declares that its proceeds shall be considered the measure of its value, in any suit or controversy between the parties. How can such inquiry arise, or how can the question of value become material as a factor in adjusting conflicting claims, unless that value is ascertained by a sale of the entire title to the entire property? Sales under orders of court, granted under this section, are classed as sales free from incumbrance, because, no matter what may be the state of the conflicting claims and rights, the purchaser gets a good title, and leaves the contestants to litigate over the money proceeds. The order of sale in this case did not conform to section 5063 of the Revised Statutes, because it did not order the sale of the entire title. It simply ordered a sale of the residuum of ownership, beyond the prior lien and claim of the State and the bondholders under the first mortgage. There is no provision in the act of Congress for granting such order, and the consequence claimed as the result of such sale has no statutory ground to rest on. This entire system is the creature of statute, and can

[Tenn. and Coosa R. R. Co. v. East Ala. R'y Co.]

not be extended beyond its terms.    There is no middle ground between the two methods of sale, the assignee is authorized to resort to.    Again : To bring a case within section 5063, Revised Statutes, the order of sale can only be granted, *after such notice to the claimant as the court shall deem reasonable.*    In this case there was not only  no notice to the claimant, the Tennessee and Coosa Railroad Company, but its very existence was ignored in the proceedings.    Notice was indispensable, as declared in many courts of the highest authority, and, among them, many rulings of the United States Supreme Court.—*Ray v. Norseworthy,* 23 Wall. 128 ; *Stickney v.  Wilt, Ib.* 150 ; Bump on Bankruptcy (10th Ed.), 619–20.    As was said in  *Glenny v.  Langdon,* 98 U. S. 20, 31, " neither the assignee nor any creditor can have any greater right under the bankrupt act, than the act itself confers."    And in *Yeatman v. Savings Institution,* 95 U. S. 764–6, it was said : " Except in  cases [enumerated, but this is not one of them], the assignee takes the title subject to all equities, liens or incumbrances, whether created by operation of law, or by act of the bankrupt, which existed against the property in the hands of the bankrupt."—*Stewart v. Platt,* 101 U. S. 731 ; *Dudley v. Easton,* 104 U. S. 99 ; *Rhodes v. Blackiston,* 106 Mass. 334 (s. c. 8 Amer. Rep. 332); *Shaw v. Lindsey,* 60 Ala. 344.

In the chancery suit between these parties, 73 Ala. 426, we showed that by failure to perform conditions precedent, the East Alabama and Cincinnati Railroad Company never acquired title to the Tennessee and Coosa Railroad.    We showed further, that by the bankruptcy of the former corporation, it had become unable to comply with its contract, and thus acquire the title.    It was therefore in possession by no title, legal or equitable.    In this condition the claim of the bankrupt, if claim there was, devolved on the assignees.    " If  .    .    the property has not been conveyed in fraud of creditors, he [the assignee] has no greater interest in or better title to it than the bankrupt."—*Donaldson v. Farwell,* 93 U. S. 631.    Having gone into possession under an executory contract of purchase, the East Alabama and Cincinnati Railroad Company was estopped from disputing the title of the plaintiff corporation ; and the assignee, standing in the bankrupt's shoes, was equally estopped. And both the bankrupt and the assignees being in by no right, we are at a loss to know how the East Alabama Railway Company, which is in no way connected with that possession, and derives no title from the assignees, can claim any benefit therefrom.— *Wilson v. Glenn,* 68 Ala. 383.

There is another view.    Section 5057 of the Revised Statutes applies the two years bar to suits "touching property or rights of property transferable to, or vested in the assignee."

34

It extends no farther. The bankrupt corporation having no property, or right of property in the subject of this suit, it neither vested in, nor was it transferable to the assignees.—*Porter v. Lazear,* 109 U. S. 84.

The plaintiff can recover only to the extent the defendant is shown to have occupied its previously located road-bed and right of way.

The judgment of the circuit court is reversed, and the cause remanded.

BRICKELL, C. J., not sitting.