# Lovelace *v.* Montgomery & Eufaula Railway Company.

## *Ejectment.*

(Decided Nov. 23, 1911, 56 South. 711.)

1. *Ejectment; Complaint; Description of Land.*—Where lands are described in a complaint so as to be capable of identification or location the complaint is not demurrable for insufficiency in the description of the land.

2. *Same; Requisites.*—A count in a complaint in ejectment which contains nothing but the description of the land and the name of the parties is bad.

3. *Deeds; Description; Property Conveyed.*—Where a deed referred to a contract of sale and a map for a description of the land to be conveyed; and the contract described the land as fifteen acres adjacent to and south of a railroad right of way, and fronting on the river a certain distance, naming it in feet, and being about 370 feet across on the river front, and the map itself did not identify the land in that it failed to show with certainty the direction of the river or the railroad, the land could not be located without the aid of extrinsic evidence showing the distance and the direction of the lines marked on the map; especially where the contract recited that the grantor would convey the 15 acres whenever it was surveyed by the purchaser and a deed presented.

4. *Evidence; Judicial Notice.*—Although most rights of way are 100 feet wide and the track is usually laid in the center, the courts cannot know judicially that the right of way does not exceed 100 feet in width, or is 100 feet wide, or that the track is laid in the center; this is true, notwithstanding the right of way was that of a railroad authorized to acquire such right of way not to exceed 100 feet in extent.

[Lovelace v. Montgomery & Eufaula Railway Company.]

5. *Appeal and Error; Presumption to Sustain Judgment.*—This court cannot presume in order to sustain a judgment in ejectment which describes the lands as bounded by a railroad right of way with the beginning point at a specified number of feet from the center of the track, that the right of way was 100 feet wide, and that the track was in the center, as the statute limiting the acquirement of right of way limits it to what may be necessary, not exceeding 100 feet.

APPEAL from Barbour Circuit Court.

Heard before Hon. MIKE SOLLIE.

Action by the Montgomery & Eufaula Railway and others against McKenzie and others, with the suggestion that E. M. Lovelace was the landlord, and order issued to have him come in and defend. Judgment for plaintiff and defendant appeals. Reversed and remanded.

PEACH & THOMAS, for appellant. The demurrers to the counts should have been sustained, because they would not support a judgment, although not demurred to on the ground that the defendant had not entered into the consent rule.—*St. Clair v. Smith,* 112 Ala. 351. The description was not sufficient, and the demurrers should have been sustained on that ground.—*Bush v. Glover,* 47 Ala. 167; *Humes v. Bernstein,* 72 Ala. 546; 1 Enc. P. & P. 158. On these same authorities, the errors assigned as the 3rd and 4th grounds must be sustained. The court erred in giving the affirmative charge, as the court cannot judicially know what dimensions the right of way was, or that the track was laid in the center thereof, and cannot aid the description by such knowledge.

A. H. MERRILL & SON, and G. L COMER, for appellee. The deed by reference to the contract and map sufficiently describes the land, and the court judicially knows that the right of way of a railroad in this state is 100 feet wide, 50 feet on each side of the center of the track.

—*Haley v. K. C. M. & B.*, 113 Ala. 640; *Martin v. U. S. & N. R. R. Co.*, 163 Ala. 215. It follows from these authorities that the court properly overruled the demurrers to the complaint and gave the general affirmative charge for the plaintiff.

MAYFIELD, J.—The action is the statutory one in the nature of ejectment.

The complaint as last amended consisted of two counts, "1 and 2." Demurrers were interposed and overruled to both of these counts. The chief ground of demurrer insisted upon is that each count was too indefinite and uncertain as to the description of the land sued for.

We do not think either count was subject to demurrer for that reason. The lands described could be located or identified by the description in either count—which is all that is required.—*T. & C. R. R. Co. v. East Ala. R. Co.*, 75 Ala. 522, 51 Am. Rep. 574; *Jinkins v. Noel*, 3 Stew. 60; *Griffin v. Hall*, 115 Ala. 482, 22 South. 162; *O'Neal v. Seixas*, 85 Ala. 80, 4 South. 745.

Count 2, however, is wholly bad, for the reason that it contains nothing but the description of the lands, and the names of the parties.

It may be that plaintiff's deed, which was its only claim of title, in connection with the Guice contract to which it made reference, and the deed introduced by defendant, were sufficient to show that the land sued for was that conveyed by plaintiff's deed; but it is very certain that it was not so conclusively and indisputably shown that the court could direct the verdict. Plaintiff's deed would have been void for uncertainty of description, of course, but for the reference to the Guice contract of sale and map for the description of the land intended to be conveyed. Counsel for appellee are in

error in thinking that the description in the Guice con-
tract of sale, and the map attached, necessarily and cer-
tainly described the land sued for. The map is far from
being self-explanatory in such degree as to identify the
land sold, or to identify it, even if it be taken in con-
nection with the contract adduced to show that it was
of, or included, the identical land sued for; and no evi-
dence whatever was offered to explain the map, such as
the directions of the compass, distances, etc., nor to des-
ignate the land sued for or attempted to be described
in the contract of sale to which it is attached. The only
description, therefore, of the land conveyed to plaintiff,
is that in the Guice contract of sale and the map at-
tached—which is far from being definite and certain.
The description in this contract is as follows: "Fifteen
acres of land adjacent to and south of the right of way
of the South Western Railroad Company, and fronting
the Chattahoochee river about one thousand and forty
or fifty feet, being about three hundred and seventy-five
feet across, on the river front, lying in said state and
county, and being marked off and and laid out within
the blue lines on the diagram hereto attached and mark-
ed 'Exhibit A.' "

The reporter will insert a copy of the map referred
to in his report of this case. (See page 158 for map.)

It will be observed that the description in the contract
fails to show whether the land sold is on the east or
west bank of the river, if it runs east or west. Nor
does the map show certainly the direction of the river or
of the railroad forming the boundaries of the land. There
are two dim pencil tracings on the original map sent up
for our inspection, which were probably intended to show
the direction of the compass and would therefore, in
some measure, explain the map; but in the copy of the
map shown in the transcript these pencil tracings do not

[Lovelace v. Montgomery & Eufaula Railway Company.]

The heavy black lines represent the
blue lines referred to.

appear, and the two appearing on the original do not exactly correspond as to direction, though they may be said to do so in the main.

The land attempted to be described in the contract, in the complaint, and in the judgment, is evidently a quadrangle; but the map shows no such land traced or platted. It shows one piece of land indicated to contain 1½ acres; but it is a triangle, two sides of which are straight lines, and the third, a curved line; but the dimensions of this triangle are not given otherwise than might be indicated by the area. Neither side of it touches the bank of the river.

The result is that we are wholly unable, with the entire record, containing all the evidence, pleadings, and original map, to locate the land conveyed to plaintiff or recovered in this action. It is very probable that the sheriff, with the aid of a surveyor, could locate the land sued for, and that recovered; but he could not so locate that described in the deed or in the Guice contract, without the aid of some evidence extrinsic to this record. The map, without the aid of some extraneous evidence, to show the distances and the directions of the lines marked thereon, tends rather to confuse the other descriptions than to explain them.

The Guice contract, and the map attached, show on their face that they were never intended as certain and specific descriptions of the land, but the contract recites that the vendors will convey the 15 acres mentioned, whenever it is surveyed by the vendee and a deed is presented to them—which is not shown to have been done by the vendee or any other person. This probably accounts for the uncertainty and confusion in the description and maps.

Counsel for appellee are in error when, in referring to the Guice contract and the deed from Moulthrop to

defendant, they say: "One or both of the above papers specifies and states that the beginning point was at a point on the west bank of the Chattahoochee river, fifty feet from the center of the track of the South Western Railroad. Besides, this court judicially knows that the right of way of a railroad in this state is 100 feet wide, 50 feet on each side of the track."

They are in error as to both the facts and the law: Neither one of these papers specifies or states the fact that the beginning point was at a point on the west bank of the Chattahoochee river, and 50 feet from the center of the track. Neither the center of the track, nor the west bank of the river, is mentioned in either. It may be that the court and the jury, and this court, could infer that it was on the west bank rather than on the east, because the east would put it in Georgia, and the instruments recite that the land is in Alabama; but they nowhere recite that the starting point is 50 feet from the center of the track.

This court does not judicially know that the right of way in question was 100 feet wide, nor that the railroad track is the center thereof, whatever may be its width. It is very true that most rights of way of railroads in this state are 100 feet wide, and that the track is usually in the center; but there is no law, written or unwritten, fixing these matters, nor is there any such universal rule, in regard thereto, as would afford this court, in the absence of any testimony on the subject, grounds for the judicial assumption of such facts in the case at bar. We do not think that the cases cited by appellee so decide. The case of *Haley v. K. C., M. & B. R. R. Co.*, 113 Ala. 640, 41 South. 357, decided only that, where a complaint alleges that the plaintiff was walking along a footpath about five feet from the track of a railroad, the court will construe the complaint

against the pleader and presume that the footpath was on the right of way. It is true that the court, in that case, said that under the Constitution and statutes of this state the railroad company was authorized to condemn a right of way 100 feet wide; but the court did not say that it would presume the railroad company had so condemned a right of way of. that width, nor that the track was in the center thereof. It merely indulged the presumption, against the pleader, for that he had failed to show that he was not a trespasser.

Moreover, the statutes in question limit the right of way to what may be necessary, not to exceed 100 feet in width.—*Ala. Mid. Ry. Co. v. Brown*, 98 Ala. 648, 13 South. 70.

That no such presumption can be indulged, as is necessary to support the ruling in this case, will clearly appear from an examination of the two following cases:

In the case of *Tennessee & Coosa Railroad Co. v. East Alabama Railway Co.*, 75 Ala. 523, 51 Am. Rep. 475, it is said: "The description of what is called the right of way—that area of servitude which lies outside of the graded track—is not sufficient. Its dimensions should have been given as a guide to the jury, and to the officer executing the writ of possession."

In the case of *Louisville & Nashville Railroad Co. v. Smith*, 141 Ala. 341, 37 South. 492, it is said: "Cases there have been in which presumptions were indulged favoring the existence of a right of way co-extensive with the limits allowed therefor by statute; but such presumptions, if not made against the party entering in the assertion of rights under the statute, or in the construction of some conveyance or other contract, have usually been based upon a statute differing in terms and effect from the chartering act relied on by defend-

ant.   That act created no right of way, its provisions in respect thereto being merely for the acquisition of one within maximum limits of width without otherwise fixing the area wherein the same should presumptively or otherwise exist.   Such provisions, though contained in a public statute, and a fortiori when in a private act, do not impart to a mere license to build a railroad the effect of protecting the builder in the occupation or use of lands not taken in the execution of the license, though they be within the legal limits of width.—*Hendrix v. Southern Ry. Co.*, 130 Ala. 205 (30 South. 596, 89 Am. St. Rep. 27) ; *Nashville, etc. R. Co. v. Hammond,* 104 Ala. 191 (15 South. 935).   See also *Stein v. Burden,* 24 Ala. 130 (60 Am. Dec. 453).   This road having been completed and maintained on other lands for 40 years before the defendant's entry thereon, authority for the entry is not to be presumed or inferred from the license to build."

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

All the Justices concur.