## Turner *versus* Reynolds.

1. Where both parties claim under a common source it is not necessary for the plaintiff to trace his title beyond it.

2. If the defendant be in possession as a mere intruder, it is only necessary to show the prior possession of the plaintiff, without showing a legal title in him.

3. A son took possession of a coal vein under a parol agreement with his father, (who claimed the whole tract on which a large vein was then opened,) that he should have a smaller vein if he opened it. A lease was afterwards made by the father to the son and others, by which the lessor "demised, let, and to mine let" all the tract of land known as No. 49 (the number of the lot on which the vein was opened), containing 160 acres or thereabouts, "and the coal-bed thereon and now opened."

*Held*, that after the lease, the son, with his co-lessees, was in possession of the land as *tenant*, and not as owner.

4. In an ejectment by persons claiming from the father, against persons claiming under the son, it was *Held*, that the plaintiffs might show the possession by the father of the large vein, for the purpose of showing a right of possession in him to the small vein, and were not limited to proof of the possession in the father of the part of the land in which the small vein was opened.

5. On cross-examination, the defendant is to be confined to the testimony given by the witness in chief.

6. The executor of the grantor was a competent witness for the plaintiffs, who claimed as purchasers from his testator, though it appeared that the material part of the assets of the estate consisted of the bond of the plaintiffs, one of whom had declared to the executor that in case of failure to recover in this suit, he would endeavor to get an abatement of the bond. His interest in the matter was too remote to affect his competency as a witness.

7. One who has the exclusive right to mine coal upon land is entitled even as against the owner of the soil and so certainly against an intruder to the possession of *the land* so far as it is necessary for such purpose.

8. Where the portion of land necessary for such mining purposes did not appear in the case, it was *Held*, that this Court would presume, as against an intruder, that the possession of *the soil* in which the vein in dispute was situate was necessary for the purpose of mining.

[Turner *v.* Reynolds.]

ERROR to the Common Pleas of *Luzerne county.*

This was an action of ejectment by William C. Reynolds and Jane his wife, against Samuel G. Turner and Samuel Wadhams, for three acres of land in Plymouth, Luzerne county, being part of lot No. 49, called "New Holland." The plaintiffs claimed under John Smith.

The title to lot No. 49, containing 121 acres, was shown to be out of the Commonwealth, but was not proved to have ever vested in the said John Smith. The *coal* on said lot No. 49 was conveyed to John Smith by two deeds, but it was alleged that title in the grantors to the land was not shown. Smith did not claim *the soil* of the tract, nor did the plaintiffs claim or assert any title to the land, their claim being confined exclusively to the coal on the tract.

As early as 1816 or 1820 John Smith went into possession of a coal-bed on said tract known as the "Big Vein," and claimed the coal on the tract described in the deeds to him. He continued in possession of this coal-bed for more than twenty-one years before the suit was brought; and on the 8th of December, 1848, he conveyed to William C. Reynolds and wife, all the coal in lot No. 49. There are several veins of coal, two of which are opened. One vein, the first opened, is called the red ash vein or "Big Bed," which is a vein of about twenty feet in thickness, and is the same which John Smith had in possession for above twenty-one years before he conveyed to Reynolds and wife; the other vein opened is the white ash vein or "The Little Bed," which is a vein of about seven feet in thickness, and overlays the "Big Vein" with rock, slate, &c., of from one to two hundred feet in thickness, between these two veins. John Smith worked only the red ash vein or "Big Bed." The "Little Bed" or white ash vein was not opened until 1831 or 1832, when it was opened by Francis J. Smith, a son of John Smith, at a point on the tract about a half mile from the opening into the large vein.

John Smith had made some examinations in 1831 or 1832, and told his son Francis that if he would open the small vein he would give it to him. Francis soon after had search made for the small vein, found what was supposed to indicate it, set men to digging a tunnel, and in 1833 he got to the face of the coal of that vein; and he proceeded from year to year, mining and transporting from the bed so opened by him, considerable quantities of coal. Several witnesses testified that John Smith told Francis he might have the bed if he would open it; that he was there frequently while Francis was opening the mine; and one witness testified that he heard John Smith say to Francis that if he would open the bed he would give it to him; and Francis after that, in the presence of John Smith, hired the same witness to make the first opening, and it was made. Francis continued to mine yearly, after he

opened the small vein, until he became embarrassed in the fall of 1847; and on the 8th of January, 1848, he made an assignment of all his estate, real and personal, to V. L. Maxwell and Charles Denison, who proceeded to act as his assignees. These assignees sold the interest of Francis in the coal-mines on the tract called "New Holland" to Samuel G. Turner and Samuel Wadhams, the defendants, who were creditors of Francis J. Smith, and conveyed the same to them by deed dated the 7th day of November, 1849. The said Turner and Wadhams, under this sale and conveyance, took possession of, and mined coal in the "Little Bed," opened by Francis J. Smith, claiming to own the same in right of the said Francis.

On the trial of the case the *plaintiffs* proceeded to prove that John Smith went into possession of the premises described in the writ in 1811, and continued to use and occupy the same for mining coal till he sold the same to plaintiffs; and then asked the witness as to the possession of John Smith of *the large vein*, on a part of the tract not included in the writ. The defendants objected to any evidence of possession of any coal-bed, except that on the land described in the writ and mentioned in the plaintiffs' written offer. The Court overruled this objection, and permitted the plaintiffs to prove the possession of John Smith in the large vein, for the purpose of showing title to the smaller vein.

The defendants' counsel excepted, and this was the *first* bill of exceptions.

The plaintiffs proved by Samuel Ransom that the coal business on the tract described in the deeds to John Smith, but not on the part demanded in this suit, was carried on by John Smith up to 1837. On the cross-examination of this witness, the defendants proposed to ask him whether Francis J. Smith and Samuel French did not carry on the coal business, each on his own account, long prior to 1837, on the same tract. The Court rejected the proposed testimony, and that constituted the defendants' *second* bill of exceptions.

The plaintiffs offered Draper Smith as a witness. The defendants showed that the witness was the executor of the will of John Smith; that the assets of the estate consisted of the bond of William C. Reynolds for $8000, the balance of purchase-money for the coal on lot 49 conveyed to him and wife by John Smith; and that *Reynolds* had informed the executor that if this suit should go against him he would endeavor to get an abatement from the purchase-money.

The admission of the witness constituted the defendant's *third* bill of exceptions.

On the trial of the case the plaintiffs gave in evidence a lease dated 10th February, 1840, from John Smith to Samuel French, his step-son, Francis J. Smith, his son, and Draper Smith and

[Turner *v.* Reynolds.]

William C. Reynolds, his sons-in-law, by which he " demised, let, and to *mine* let all that tract of land, situate in Plymouth township aforesaid, known as No. 49, in the 4th division of said township, containing 160 acres more or less, *and the coal-bed thereon*, and now (then) opened," &c., for two years from the 1st of April then next, the rent to be $600 per year. The said lessees agreed to work and carry on the aforesaid coal-bed " in a prudent, skilful, and workmanlike manner."

The lessees went into possession of the " Big Bed," and the plaintiffs claimed that this lease included the opening in the little vein made by Francis. This was denied by the defendants, who claimed that the lease did not and never was intended to include the smaller vein.

In support of their allegations, the defendants gave evidence of declarations of John Smith, that he had given the little bed to his son Francis, &c.

The defendants claimed that John Smith offered to give Francis the little vein of coal, if he would find and open it; and that in pursuance of such offer, Francis proceeded, found and opened that vein, and took possession under the parol contract, and that the title to the White Ash Vein, or little bed, so discovered and opened by Francis, was vested in the defendants, as his grantees—also that it was a fact for the jury whether the lease of 1840 covered and included the little bed, to be determined by the terms of the lease, the testimony of Jameson Harvey and Alexander Gray, and the whole evidence in the cause; and that the title shown by the *plaintiffs* was under the statute of limitations and was only to the vein of coal of which John Smith had had possession for twenty-one years—possession under color of title not extending the possession of John Smith beyond the vein of coal worked by him and in his possession, and not to be held to give title to either the under or overlaying veins.

Further, that the plaintiff's ejectment being for three acres of land—they showing no title in themselves, except to the coal, nor to any vein of coal except the large vein, the verdict in the case could not be a general one for the plaintiffs; nor could they recover the three acres of land under the evidence and the description in the writ—that if anything could be recovered by the plaintiffs, it was only the large vein of coal, and that it could not be recovered in an ejectment for the land, describing it as *land* in the writ.

There was given in evidence, on the trial, a certificate to Hezekiah Roberts, in 1802, for part of lot No. 49; and a patent to him in 1805. Also a deed by William Currie to Lewis Hepburn, in 1810, for coal-bed on lot No. 49, reserving the fee simple in the soil, and reciting a conveyance by Roberts to Currie. Also a deed of Lewis Hepburn to John Smith, in 1811, for the one undivided

[Turner *v.* Reynolds.]

half of the coal on the lot No. 49; and a deed of Patrick Hepburn and wife to John Smith, in 1816, for the other undivided half part of a certain coal bed or mine, on lot No. 49, with all other coal-beds on said lot.

JORDAN, J., charged that the lease of 10th February, 1840, by John Smith to Francis J. Smith and others, if it covered the premises in dispute, was a bar to the title set up by the defendants. He observed that the construction of the lease was for the Court, and the Court thought the terms of it covered the property in dispute. He said, "it embraces the whole of lot No. 49—all that tract of land, containing 160 acres and the coal-bed thereon, and now (then) opened. It includes the property in dispute; there is no reservation or exception in the lease in favor of Francis J. Smith, or any other person, and the lessees leased the whole tract, together with all the appurtenances, and the whole premises thereto belonging. The acts of the parties are the best evidence of the extent and limits of the demise."

The Court further instructed the jury, that this was not such a case in view of all the evidence, as satisfied the Court, that the defendants were entitled to hold the premises in dispute. The plaintiffs were entitled to a verdict. He observed that both Court and jury were to be satisfied.

The Court also charged (in answer to a point on part of defendants) that the action could be maintained, although not brought for the coal, but the land; and that the action might be maintained, although the evidence showed that John Smith was not the owner, possessor, or claimant of *the land.*

August, 1853, verdict was rendered for the plaintiffs.

In the first, second, and third assignments of error, it was assigned that the Court erred in admitting the evidence specified in the first, second, and third bill of exceptions. 4. In admitting the evidence of Miles C. Richards. (He testified, *inter alia,* that Francis J. Smith and others had the mines worked for some years, till stopped by John Smith, perhaps in October, 1847.) The 5th was to the instruction that the lease was a bar to the action—that it embraced the property in dispute. The sixth was to the instruction that this was not such a case in view of all the evidence as satisfied the Court, that the defendants were entitled to hold the premises in dispute, &c. Seventh, in charging that the action could be maintained, although not brought for the coal, but for *the land;* and that it might be maintained, although the evidence showed that John Smith "was not the owner, possessor, or claimant of *the land.*"

*W. J. Woodward, H. Wright, McClintock,* and *Mallery,* for plaintiffs in error.—It was contended, as to the *charge,* that the

Court erred in taking from the jury the question of fact whether the lease of 10th February, 1849, covered the premises in dispute. The construction of a deed is for the Court, but the applicability of the description in it, being a question of fact, is for the jury, and is frequently to be determined by evidence *aliunde:* 7 *Barr* 198; 10 *Verm.* 247. It was contended that the lease was a lease *to mine*—to mine "*the coal-bed thereon and now opened;*" and it was contended that the only coal-bed *then* opened on the tract and claimed by John Smith and in his possession, was the *twenty feet* vein. There was no covenant to work the *coal-beds.* Evidence was given of declarations of John Smith, made after the lease, that the little bed belonged to Francis. What was embraced in the lease was for *the jury:* 8 *Johnson* 495; 4 *Dana* 336.

It was further contended that the action being for *land,* there could not be a recovery of a mere right to mine coal; the recovery should accord with the description in the writ. By the writ the sheriff was ordered to deliver to the plaintiff *the land,* to which, it was said, the plaintiff had no title.

*H. B. Wright,* for defendants in error.—Had there been no evidence of title in *John Smith,* the law would presume it perfect for the purposes of this action, as the parties claimed under him. When both parties claim under the same title, the plaintiff is not bound to trace his title beyond the common source of their right: 7 *Ser. & R.* 230, Riddle *v.* Murphy. It is not necessary to show title out of the Commonwealth, where both plaintiff and defendant derive title from the same person: 9 *Ser. & R.* 47.

5th assignment. The legal effect of the lease did not depend on extraneous facts, as in cases referred to on part of the plaintiffs in error, but upon the meaning of the terms of the lease. The lease was of "all that tract of land." The surface did not belong to the lessor, and therefore the words used did not apply to it, but to the coal which he claimed. Land is a general term, and includes everything belonging to it.

6. If there was a parol sale to the son, it was merged in and terminated by the lease: 7 *Harris* 476. To the objection that the plaintiff was not entitled to recover because under the statute of limitations he had title only to the big or red ash vein, it was, *inter alia,* said that Reynolds was in possession under color of title, and had a right to turn out mere intruders.

7. Ejectment will lie for a coal-mine: 2 *Cro.* 150; 2 *Yeates* 331. It is sufficiently described by the word land, at least as against defendants. They were not claiming the soil, and the ejectment was brought to recover the mine. Under the deeds to John Smith, such interest in the soil was vested in him as was necessary to the enjoyment of the coal-mine. The deed of Lewis

[Turner v. Reynolds.]

Hepburn to John Smith, for *one-half* of the coal on lot No. 49, was produced; and also a deed from Patrick Hepburn and wife to John Smith for the other half. This last-mentioned deed recited a conveyance to Charles Catlin of the last moiety, but the conveyance by Catlin to Patrick Hepburn was lost. This was the only link wanting to complete the plaintiff's title. But its existence might be presumed: 7 *W. & Ser.* 215. The plaintiff, therefore, did not rely on the statute of limitations, but also on such presumption.

The opinion of the Court was delivered by

KNOX, J.—This was an action of ejectment brought by William C. Reynolds and wife against Samuel G. Turner and Samuel Wadhams, for three acres of land in Plymouth, Luzerne county, part of lot No. 49, called New Holland. The plaintiffs claimed under John Smith, and the defendants under Francis J. Smith, the son of John Smith.

On the trial, the defendants alleged, 1st. That John Smith had no title to the premises in dispute; 2d. That if he had, it passed by a parol gift or contract to his son Francis J.; 3d. That as the action was brought for land, and the evidence only showing title for the coal upon the tract, no recovery could be had in the action as brought.

First, as to the title of John Smith. It is only necessary to say that if Francis J. Smith's claim was derived exclusively from his father, and this was scarcely denied, the plaintiffs could not be required to trace the title beyond the common source under which both parties claimed. If the defendants were in possession as intruders merely, the prior possession of John Smith and of the plaintiffs was sufficient, without showing a legal title.

It is very clear that the main contest between these parties turned upon the validity of the alleged parol gift or contract from the father to the son; and with the decision of the Court of Common Pleas upon this question we are entirely content. No other construction of the lease bearing date on the 10th February, A. D. 1840, could properly have been given, than that it included the right to mine the coal on the whole tract. Under this lease the possession was in all of the lessees as tenants in common. If Francis J. Smith ever had the exclusive possession of any portion of the tract, or the exclusive right to take coal from any of the openings, his possession after the execution of the lease was a joint one, and his right was under the lease, and not in opposition to it. He was there as a tenant, and not as an owner. This disposes of the substantial points of the controversy. For the purposes of this trial the father's title was perfect, the son's good for nothing.

The reception of the evidence mentioned in the first error assigned was proper. It had been shown that John Smith had at least colorable title to all the coal upon the tract, and his posses-

M

sion and occupancy by mining upon any portion of it was clearly pertinent.   It is not to. be supposed that he either could or would open mines upon every part of the tract at the same time.

The question put by defendants' counsel to Samuel Ransom was not a cross-examination, and therefore rightly excluded.

The interest of the executor was too remote to affect his competency as a witness.

Nothing is said in the argument of the plaintiffs in error as to the fourth bill of exceptions, and we can perceive no sufficient reason for excluding the evidence of Miles C. Richards.

The subject-matter of the fifth and sixth assignments has already been noticed.

The seventh and last error assigned is to that portion of the charge in which the Court say, "that the action can be maintained, although not brought for the coal, but the land, and that the action may be maintained, although the evidence shows that John Smith was not the owner, possessor, or claimant of the land."

One who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on his mining operations. What portion of the land in dispute was necessary for this purpose was not the subject of inquiry upon the trial.   As against an intruder, where the exception is so purely technical we will presume that the possession of the soil was requisite, in order to enable the plaintiffs to avail themselves of their mining privileges.   They have the right of entry for this purpose, which was denied them by the unwarrantable interference of the plaintiffs in error, and who cannot complain of injury, although dispossessed of the entire premises.

Judgment affirmed.

WOODWARD, J., having been counsel in this case, took no part in its decision.