# Baker *v.* Pittsburg, Carnegie & Western Railroad Company, Appellant.

*Railroads—Condemnation of land—Injury to coal land—Damages—Expert witness—Evidence.*

In a proceeding against a railroad company to recover damages for injuries to coal property, a witness called as an expert by the plaintiff, is not competent, where it appears from his own testimony that he had no knowledge whatever of the market value of coal per acre in the ground in the vicinity, although he had a general knowledge of the business of mining coal in the vicinity, and of selling it at retail.

*Mines and mining—Reservation of minerals—Right to use surface.*

Where an owner of land conveys the surface but reserves the coal,

he has a right thereafter to sink a shaft through the surface in order to mine and remove the coal.

Argued Oct. 28, 1907. Appeal, No. 8, Oct. T., 1907, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1903, No. 371, on verdict for plaintiff in case of Ann C. Baker v. The Pittsburg, Carnegie & Western Railroad Company. Before Mitchell, C. J., Fell, Mestrezat, Potter and Elkin, JJ. Reversed.

Appeal from award of jury of view. Before Brown, P. J.

At the trial the court permitted, under objection and exception, M. Peters to testify on behalf of the plaintiff as to the value of the coal in controversy [1, 3].

Defendant presented the following points:

1. Plaintiff, as the owner of the coal, has no right to go upon the surface overlying the coal to make shafts and openings to mine or remove the coal, for the reason that she has sold the surface without specifically reserving the right so to do. *Answer:* This point as a whole is refused. To the extent of making a shaft opening to reach the coal, the owner of the coal has the right to use the surface. [5]

2. A mere reservation of the mining rights does not include the right to go upon the surface to dig for and carry away the coal. *Answer:* As put this point is affirmed, unless the intent to be conveyed by it is that the owner of the coal has no right to erect a shaft opening at the surface and take the coal away, in which case the point is refused. [6]

4. The plaintiff having sold and warranted possession of the surface, reserving the coal with the usual mining rights, she has no right to take and occupy any part of the surface sold on which to locate a shaft or mining machinery. Therefore the plaintiff cannot recover damages to this coal based on its removal through the surface. *Answer:* This point, as a whole, in the alternative, " shaft or mining machinery," is refused. [7]

Verdict and judgment for plaintiff for $4,337. Defendant appealed.

*Errors assigned* were (1, 3) rulings on evidence, quoting the bill of exceptions; (5–7) above instructions, quoting them.

*J. B. Jarrett*, with him *Willis F. McCook*, for appellants. —The testimony of the witness Peters falls short of the test of qualification as laid down by this court: Friday v. Penna. R. R. Co., 204 Pa. 405; Hewitt v. R. R. Co., 19 Pa. Superior Ct. 304.

Plaintiff had no right to mine the coal: Coleman v. Chadwick, 80 Pa. 81; Martin v. Brewster Iron Mining Co., 55 N. Y. 538.

*John O. Petty*, for appellee.—Peters was a competent witness: Penna., etc., R. R. & Canal Co. v. Bunnell, 81 Pa. 414; Penna. R. R. Co. v. Henderson, 51 Pa. 315; P., & L. E. R. R. Co. v. Robinson, 95 Pa. 426; Pittsburg Southern Ry. Co. v. Reed, 44 Legal Int. 92; Jones v. Ry. Co., 151 Pa. 30; Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279; Swank v. Carnegie Nat. Gas Co., 5 Pa. Superior Ct. 371; Wilson v. Gas Co., 152 Pa. 566; Davis v. Gas Co., 147 Pa. 130; Brown v. Corey, 43 Pa. 495.

One who has the exclusive right to mine coal upon a tract of land has the right of possession as against the owner of the soil, so far as is necessary to carry on his mining operations: Sanderson v. Coal Co., 113 Pa. 126; Turner v. Reynolds, 23 Pa. 199; Robertson v. Coal Co., 172 Pa. 566; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Dand v. Kingscote, 6 M. & W. 174; Williams v. Bagnall, 15 Weekly Repr. 272; Marvin v. Brewster Iron Mining Co., 55 N. Y. 538; Rogers v. Taylor, 1 H. & N. 706; Hext v. Gill, L. R. 7 Ch. App. Cases, 699.

Opinion by Mr. Justice Potter, January 6, 1908:

The issue in this case was framed under an appeal from the award of viewers appointed to assess damages for the construction of a tunnel by the defendant railroad company, by virtue of its power of eminent domain, through a piece of coal land, owned by the plaintiff. The tract in question contained between twenty-one and twenty-two acres. The plaintiff had formerly owned the surface, but some twenty years before the entry by the defendant she sold the land, expressly reserving in her deed " all of the coal underlying the same, with all mining rights and privileges appurtenant thereto." Only about one and a half acres of coal was actually taken

by the defendant, but the railroad tunnel divided it so that that there were about sixteen acres on one side and five on the other, and this, it was claimed, damaged the whole. Upon the trial in the court below the jury found a verdict in favor of the plaintiff for $4,737 on which judgment was entered.

The first and second assignments raise the question of the competency of a witness, M. Peters, called by plaintiff to testify to the market value of the coal. The question to be determined was the amount of injury which had been done to the property of the plaintiff. While less than one and a half acres of the coal was actually taken by the defendant, yet it was claimed that the cutting of the property in two parts had the effect of preventing the whole from being mined in one operation, and rendered it unprofitable to mine either portion by itself. But whether or not this was true, the primary inquiry was as to the market value of the coal in place in the ground. Yet, when asked if he knew the market value of coal lands, such as the Baker coal, at the time the railroad passed through, the witness Peters said, " I don't know of any coal in the market near that place for sale. Therefore, I cannot say what the market value of coal would be there." It would seem that this frank statement should have been sufficient to excuse the witness. But when he was further asked if he could state what coal was held at by the acre, by the people owning coal in that vicinity, he answered, " About that time I didn't know of anyone owning any coal except the Baker coal and another block adjacent to that coal." The court then asked : " Did you have a general knowledge of the holding and selling market value in that vicinity about 1902 by the acre ? " Witness answered : " It is just this way : There was no coal to sell in that neighborhood that I know of." " Q. Then did you or not know of the market values at that time ? A. All I know is what was offered for this other block of coal. Q. For a single block ? A. For a single block." Then, after stating that he had heard of sales made two or three years before, which the court said were too remote, he was further examined by the court as follows : " Q. Do you think you have a sufficient knowledge of the fair market value of coal property, of the Baker and similar tracts in the vicinity, about 1902 ? A. I think I ought to have. Q. Why should

you have? A. From my long experience in mining coal in that vicinity." This was rather remarkable after the witness had expressly stated that he did not know the market value of the property. It is difficult to understand how his long experience in digging or mining coal would give him knowledge of the market value by the acre. His skill as a miner would give him no knowledge of the selling value of the coal in the ground; nothing but buying or selling himself, or his knowledge of what was done by others in that line would fit him to give an estimate of the market value. When asked, "Is there anything else? Have you had talks with your neighbors and people out there?" he replied: "Talks with the neighbors and different parties, foreigners to that place, that bought coal in that vicinity." But no time was fixed as to when the foreigners bought the coal, and presumably he referred to the sales made some years before, which the court had already characterized as being too remote. We think the witness clearly showed his own incompetency to testify as to market value, and that the court mistakenly admitted his estimate. This is further apparent from his cross-examination, where he said that while he had heard of several sales of small tracts of coal land in the neighborhood, yet he did not know the prices paid. He and another party had offered to buy the coal on an adjoining tract, but their offers were to take the coal out by tonnage, or by royalty. Witness also said that he based his opinion as to the value of this coal "on the law of supply and demand," and that the Baker tract was located more convenient to the market than the tract which witness had offered to buy on royalty. He stated further that he fixed the price regardless of the sales that had been made in the neighborhood. He thought at a valuation of $600 or $700 an acre the coal could be worked out.

The witness evidently had in mind, in making his estimate, the results which he personally might be able to work out by his skill as a miner, in connection with his ability as a business man, by opening and managing a retail mine, and selling coal to such customers as would buy at retail in the vicinity. We think this was carrying the inquiry beyond its legitimate scope. Plaintiff was only entitled to have her coal valued at what it might be worth as it lay in the ground in the condition in

which it was when the railroad ran through it.   Its market value is its fair selling value for cash, not payable as royalty, strung out through a long series of years, but payable at the time it was taken by the defendant, or as soon thereafter as the value could be determined.   We are satisfied that the witness Peters did not show himself competent to testify as to market value in the proper sense of the term.   His own testimony showed that whatever may have been his general knowledge of the business of mining coal in the vicinity, and of selling it at retail, he had no knowledge of the market value of the coal per acre in the ground.   He was, therefore, incompetent to give his opinion as to that ; under the circumstances it was a mere conjecture, based upon what he thought he might be able to work out of it by opening and conducting a retail coal business in connection with the property.   As was said in Friday v. Penna. R. R. Co., 204 Pa. 405, the market value of property is not to be fixed " by what a particular witness, having in view a special purpose, might be willing to give for it, if he had the money."

The first and second assignments of error are sustained.

As to the other specifications of error which question the correctness of the ruling of the trial judge, that under the reservation in plaintiff's deed, she had the right to sink a shaft upon the land sold by her for the purpose of mining the coal which she had reserved, we think the court below was clearly right.   It is the established law in Pennsylvania.   In a recent case, Youghiogheny River Coal Co. v. Allegheny Nat. Bank, 211 Pa. 319, our Brother Mestrezat said (p. 324): " If the owner of the whole fee conveys the coal in the land in general terms, retaining the residue of the tract, the purchaser acquires the coal with the right to mine and remove it, provided he does so without injury to the superincumbent estate."   The undoubted right of the owner of coal to mine and remove it, was also expressly recognized in Pringle v. Vesta Coal Co., 172 Pa. 438, and the principle that " one who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on his mining operations " is laid down in Turner v. Reynolds, 23 Pa. 199.   See also Chartiers Block Coal Co. v. Mellon, 152 Pa. 286.

The general rule is stated in 2 Lindley on Mines, sec. 813, where it is said: "A grant of minerals implies the right to win them from the underlying soil. The use of some portion of the surface is necessary for the proper enjoyment of this right. To reach the minerals the miner must pass from the surface downward; to do this he has a right of way of necessity. He may sink through such land from the surface to the mines, in order to reach and work them." And in 2 Sugdon on Mines and Mining, sec. 1008, it is said: "An express grant of all the minerals and mining rights in a tract of land is by natural implication the grant also of the right to open and work the mines, and to occupy for those purposes as much of the surface as may be reasonably necessary."

The English rule is to the same effect, for in a late work on the subject, Cockburn on Coal and Coal Mining (1902), pp. 117-118, it is said: "The right of a grantee or person entitled to mines or minerals depends upon the terms of the instrument, but if mines are excepted in a lease, conveyance or other instrument without any express mention of working powers, then the law implies or confers all such powers as are reasonably sufficient to enable the mine owners to dig and carry away the minerals, namely, a power to enter upon the surface, dig pits, get the minerals, and for a limited period deposit them on the surface." In the present case the right to the coal is by way of reservation, but that has the same force and effect as a grant.

The fifth, sixth, seventh and ninth assignments are dismissed, but by reason of the error as set forth in the first and second specifications, the judgment is reversed, and a venire facias de novo is awarded.