# McMillen et al. v. Rochester & Pittsburgh Coal Co.

*Joseph A. Nickleach*, for plaintiff.
*Harold R. Schmidt* and *Henry McC. Ingram*, for defendant.

GRAFF, *J.*, October 25, 1973—Plaintiffs filed a

complaint in equity in this court seeking to enjoin defendant Rochester & Pittsburgh Coal Company from operating a coal ventilating fan upon a tract of land adjacent to the land owned by plaintiffs. The action was based upon the Restatement, Torts, §822, and it was contended that defendant corporation was maintaining a nuisance. After hearing, the petition for injunction was denied and the case transferred to the law side of the court for trial before the court and a jury. Considerable testimony was taken in the equity proceeding and to avoid the expense of recalling these witnesses, it was agreed that the case be tried before the court without a jury. Voluminous additional testimony was taken and the case now comes before us for disposition. We make the following

## FINDINGS OF FACT

1. Plaintiffs are individuals residing in Plumcreek Township, Armstrong County, Pa., and are the owners of approximately 60 acres of land having acquired complete title to the same in January, 1958.

2. Plaintiffs constructed two houses on their property. The first house was completed in January, 1969, and consists of a valuable modern home in which plaintiffs reside. The second was completed in August, 1969, and is rented to relatives of plaintiffs.

3. Defendant is a corporation organized and existing under the laws of Pennsylvania with its principal office in Indiana County, Pa. This corporation is and has been engaged in the mining and sale of coal with extensive mining operations.

4. Prior to 1966, Keystone Complex, which is composed of seven large utility corporations, erected a huge generating plant in Plumcreek

Township several miles distant from a mine in which the ventilating fan complained of is located. Keystone Complex generates huge amounts of electric power which is transported to the eastern part of the United States where it has a huge number of customers, paticularly in eastern Pennsylvania and New Jersey.

5. The Rochester & Pittsburgh Coal Company provides 90 percent of the coal used at the generating plant and supplies approximately 3,300,000 tons of coal per annum.

6. Defendant coal company owns many thousand acres of coal in continguous tracts and operates three mines to supply the coal for Keystone. The mines are Margaret Mine, Emily [sic] Mine, and Jane Mine. Jane Mine's operation consists of 8000 acres and it employs 472 persons with an annual payroll of approximately $5,700,000.

7. In order to conduct the mining operation, it is necessary that adequate ventilation be provided for the health and safety of the miners and stringent state and Federal regulations are enforced in order to accomplish the same. Both methane gas and dust must be eliminated and this is done by proper ventilation.

8. Defendant coal company owns the tract of land known as the Gibson Tract contiguous to the land owned by plaintiffs and lying north of it. It also owns the coal and mining rights underlying said Gibson Tract.

9. In 1966, defendant coal company began the operation of the Jane Mine. There are now five shafts and ventilating fans in this mine. Two of these fans are near the mouth of the mine and the others in places where it was determined that they should be placed in compliance with the state and Federal regulations.

10. As the mining of coal progressed, a fault in the roof made it necessary to place a ventilating fan at or near plaintiffs' property. The most advantageous place was 100 feet in front of plaintiffs' dwelling house but in order to lessen any annoyance which might arise, it was decided to put a shaft and ventilating fan upon the Gibson Tract of land 100 feet north of plaintiffs' property line and approximately 450 feet from their dwelling house.

11. Plaintiffs' predecessor in title, George L. Smale, sold to J. Cloid Rinn, the predecessor in title of defendant corporation by deed dated June 7, 1921, all of the coal underlying plaintiffs' tract of land together with the mining rights as follows:

"Together with the rights of ingress, egress and regress into, upon, through, over, along and across the lands above described, for the purpose of examining and searching for, and of mining, manufacturing and removing the same from the date hereof, and other coal now owned or that may hereafter be acquired by the said party of the second part, his heirs and assigns, and for these purposes to build roads, railroads and drains upon and under the surface of said lands, and to locate and erect such chutes, tipples, buildings and other structures with the necessary curtilage as may be necessary and proper for the convenient use and workings of the mines or works in connection therewith, and with the right to deposit the dirt or waste of the said mines or works upon the surface convenient thereto."

"And the said party of the first part for himself, his heirs, executors, and administrators, for the consideration aforesaid, do hereby remise, release and forever dishcharge the party of the second part, his heirs and assigns, of and from any and all damages to the surface of said land, the water

therein or thereon, and buildings and improvements, which may result to the party of the first part, his heirs and assigns by reason of the taking and removing of said coal."

The sale of this coal and the mining rights was specifically excepted in plaintiffs' deed to their property.

12. The ventilating fan in question is known as Jane No. 3 Fan. The shaft is 12 and one-half feet wide and 31 feet long and extends to a depth of 151 feet. The fan in question is approximately 96 inches in diameter with eight rotating propeller type blades driven at 714 revolutions per minute by a 200 horse power engine. The entire fan has a diameter of 11 feet and is six feet in length. The cost of installation was $270,000; $90,000 of which was paid for the machinery. The additional cost to defendant company for locating the fan on the Gibson Tract instead of near plaintiffs' property was approximately $21,000.

13. In the shaft, as required by law, there is an additional escape way constructed consisting of stairways to be used by the miners for escape in the event of a disaster in the mine.

14. In September, 1969, the operation of the fan commenced and said operation has been constant 24 hours per day. Jane No. 3 Fan ventilates the mine for a distance of one mile and without its operation it would be impossible to conduct mining operations.

15. The area in which plaintiffs' land is located is rural in character as to the surface and there are only a few residences in its neighborhood, however, it is also well known that all of the land is underlaid with coal and the area must be considered as coal mining in character.

16. Although the fan is headed away from plain-

tiffs' property, there is a constant humming noise which plaintiffs complain interferes with the quiet, peaceful and tranquil enjoyment of their property.

17. The noise from the ventilating fan at plaintiffs' house approximates ordinary speaking level and the principal annoyance is because of the constancy of said noise. The noise inside the house is less than voice level.

18. At the time of the sale of the coal to defendant's predecessor-in-title in 1921, ventilating fans of the same capacity as Jane No. 3 Fan were in existence and used in the coal fields of western Pennsylvania. The life of the Jane Mine is projected as 25 years beginning in the year 1966. Within two or three years, as a result of the coal mining operation, the volume of the Jane No. 3 Fan will be somewhat reduced.

19. Coal cannot be removed without ventilation and the right to ventilate is inseparable from the right to mine and remove the coal.

20. The deed to the coal with the mining rights created an implied right to defendant company to ventilate the coal beneath the McMillen tract and also the coal beneath other tracts.

21. The utility of the coal mining operation of the defendant company in supplying energy and employment is of great magnitude and the volume of the noise created by the operation of the fan is less than the amount allowed by law in the operation of motor vehicles on the highways of Pennsylvania.

22. In locating the shaft for the fan, defendant company did what was practical and reasonable in attempting to avoid the annoyance to plaintiffs.

## DISCUSSION

In transferring this case from the equity side of the court, we stated that the case would be heard de

novo with the right upon each of the parties to renew any contentions whether decided or not in the equity court. Voluminous testimony was introduced in addition to that already received in the equity proceeding. Plaintiffs' claim for damages arises under Restatement, Torts, §822. This section provides as follows:

"The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (i) intentional and unreasonable; or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct."

Three questions now arise, to-wit: (1) Whether or not the damages from the invasion are waived due to the release in the mining rights; (2) Whether or not the invasion is substantial; and (3) Whether or not the invasion is reasonable.

The mining rights contained in the deed to the coal permit the mining and removing of said coal and other coal now owned or that may hereafter be acquired and for these purposes to locate and erect such chutes, tipples, buildings and other structures with the necessary curtilage as may be necessary and proper for the convenient use and workings of the mines or works in connection therewith. The grantors also release and discharge the grantee, his heirs and assigns, of and from any and all damage to the surface of said land and buildings and improvements which might result to the grantor, his heirs and assigns, by reason of the taking and removing of said coal.

Defendant coal company contends that plaintiffs have no property rights and privileges which have been interfered with for the reason that they have been released under the terms of the conveyance of the coal.

If a person grants a portion of his property to another and the grant is susceptible of more than one interpretation, the words of the grant are to be construed most strongly against the grantor and more favorably to the grantee: Stewart v. Chernicky, 439 Pa. 43, 266 A. 2d 259 (1970).

In Turner v. Reynolds, 23 Pa. 199, 206 (1854), the court stated:

"One who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on his mining operations."

In considering the right of a grantee of coal, in Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 296, 25 Atl. 597 (1893), it is stated as follows: "As against the owner of the surface each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface, beyond the limits of his shaft, drift, or well, as might be necessary to operate his estate, and to remove the product thereof." See also Baker v. Pittsburgh Carnegie & Western R.R. Co., 219 Pa. 398, 68 Atl. 1014 (1908).

In Oberly, et al. v. Frick Coke Co., 262 Pa. 83, 88, 89, 104 Atl. 864 (1918), it is held that "An express grant of all the minerals and mining rights in a tract of land is by natural implication the grant also of the right to open and work the mines, and to

occupy for those purposes as much of the surface as may be reasonably necessary."

"The removal of gas is a necessary incident to the mining of coal, in order that mining operations may be carried on with safety. It is one of the implied rights incidental to every grant of minerals."

In New Charter Coal Co. v. McKee, 411 Pa. 307, 191 A. 2d 830 (1963), the court states upon page 313 as follows: "Where there is a clear right to deep mine coupled with a waiver of the right to support of the surface one does not have to be a mining expert to deduce that the owner of the coal has the power to sink as many shafts as he chooses and to come as close to the surface as he chooses to dig and remove 'all and every particle of coal' granted to him, without any responsibility as to the effect of his operations on the usability of the surface."

Obviously, the coal company cannot remove the coal under the McMillen tract and other adjacent tracts unless the coal mine is properly ventilated. Ventilation is required not only as a practical matter but specifically under the laws of both the state and Federal governments. It is, therefore, clearly apparent that defendant company had the implied right under the deed to the coal to sink a shaft on plaintiffs' land wherever it became reasonably necessary for the operation of the mine. This right is inseparable from the right to mine the coal. All damages to the surface of the land, buildings and improvements were specifically released and we can come to no other conclusion than that the damages now sought cannot be allowed.

Considering the second contention which arises under Restatement, Torts §822 as to whether or not the invasion was substantial, we have a decided conflict in the evidence. Plaintiffs claim damages in the amount of $25,000 and have offered evidence

which could sustain at least a part of this amount. On the other hand, there is testimony upon the part of defense that no damage was sustained by reason of the invasion. That the noise is annoying and distressing to a certain degree cannot be questioned. The neighborhood where plaintiffs' dwellings are located is extremely rural in character and is largely a wooded area and cannot be considered residential as such. It is also an area which is underlaid by valuable deposits of coal and it must also be considered as a coal mining area.

To sustain an action under Restatement, Torts, §822, it is also necessary that the invasion be intentional and unreasonable. It is clearly evident that defendant company knew when it placed the ventilating shaft that there would be noise emanating from the fan and, therefore, under the authorities, such invasion is considered to be intentional: Evans v. Moffat, 388 Pa. 559, 131 A. 2d 141 (1957); Evans v. Moffat, 192 Pa. Superior Ct. 204, 160 A. 2d 465 (1960).

In considering the reasonableness of the invasion, the utililty of the operation is balanced against the gravity of the harm and, further, the actor must use every reasonable means to avoid the damage which may arise. Because of a fault in the coal, it became necessary to put a ventilating fan in the vicinity of plaintiffs' property. This was required not only as a practical matter but by the laws and regulations of the mining acts of the state and Federal governments. Defendant company had the right under its deed to the coal and the mining rights to put a shaft on plaintiffs' land if it became necessary to do so in the removal of the coal. This it did not do. The testimony discloses that the most advantageous location for the shaft was 100 feet from plaintiffs' dwelling house but the shaft was

not placed in this location but rather on adjoining land 450 feet away from plaintiffs' residence and upon an adjoining tract of land. By this change of location, an additional sum of $21,000 was expended. The ventilating fan itself was pointed in the direction away from plaintiffs' property in order to lessen the sound. It is testified to, without contradiction, that this location was necessary for the proper operation of the mine and to comply with the regulations of the state and Federal government.

We are in sympathy with plaintiffs' contention in this case but we must be guided in our decision as to what we conceive to be the law.

## CONCLUSIONS OF LAW

The deed to the coal together with the mining rights and waiver of damage precludes recovery in this case.

## ORDER

And now, October 25, 1973, a verdict is now found in favor of defendant.

GRAFF, *J.*, March 25, 1976—Plaintiffs seek to recover damages in this case for alleged non-trespassory invasion of their interest in the private use and enjoyment of their land under Restatement, Torts, §822. This case was originally instituted in equity seeking an injunction. The injunction was refused and the case certified to the law side of the court for the determination of whether any damages had been legally sustained by plaintiffs. By agreement the case was submitted to the court for trial without a jury. An opinion was filed in which a verdict was found in favor of defendant. This matter now comes before us upon exceptions

filed by plaintiffs. A number of exceptions have been filed, first, as to the application of the law to the facts and second, as to the finding of certain facts by the court. Plaintiffs are the owners of a 60 acre tract of land situate in Plumcreek Township, this county. They acquired title to the land in 1958. Their predecessors in title conveyed the coal in this tract of land together with mining rights and a waiver of damages in a deed dated June 4, 1921. Defendant is the owner of the coal together with the mining rights and waiver of damages. In 1969, plaintiffs constructed a residence upon their tract of land and subsequently a second house was erected. Defendant is an incorporated coal company conducting large mining operations. Keystone Complex is a large organization consisting of seven large utility corporations furnishing electric power to millions of customers particularly in eastern Pennsylvania, New Jersey and Delaware. Defendant coal company is the owner of many thousand acres of coal in Plumcreek and surrounding townships, this county. The coal company provides 90 percent of the coal used in the operation of Keystone Complex which is approximately 3,300,000 tons of coal per annum. The coal company operates three mines to supply this coal. These mines are Margaret Mine, Emily [sic] Mine and Jane Mine. The Jane Mine's operation consists of 8000 acres and employes 472 persons with an annual payroll of approximately $5,500,000. Defendant coal company began operation of this Jane Mine in 1966. There are now five shafts with ventilating fans in this mine. Two of these fans are near the mouth of the mine and the others in locations where it was determined that they should be placed in compliance with state and Federal regulations. As the mining of coal progressed, a fault made it

necessary to place a ventilating fan at or near plaintiffs' property. The most advantageous place was 100 feet in front of plaintiffs' dwelling house; but in order to lessen any annoyances which might arise, it was decided to construct the shaft and ventilating fan upon the Gibson tract of land 100 feet north of plaintiffs' property line and 450 feet from their dwelling house. It is the noise which emanates from the operation of this fan that plaintiffs complain of and, therefore, seek damages. Restatement, Torts §822, has been adopted by the appellate courts of this state as the law of Pennsylvania: Evans v. Moffat, et al, 192. Pa. Superior Ct. 204, 160 A. 2d 465 (1960).

Under exceptions filed by plaintiffs, the first question which arises is whether the court has correctly applied the law as it relates to the allowance of any damage in this case. It has been repeatedly held by Pennsylvania courts that a grant of coal carries with it the right to do all things necessary and reasonable for the full use of the grantee's estate in the coal. In Turner v. Reynolds, 23 Pa. 199, 206 (1854) it is stated as follows: "One who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is necessary to carry on his mining operations." In Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 296, 25 Atl. 597 (1893), it is stated as follows: "As against the owner of the surface each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or well, to his underlying estate, and to occupy so much of the surface, beyond the limits of his shaft, drift, or well, as might be necssary to operate his estate, and to remove the product thereof." In Baker v. Pittsburgh, Carnegie & West-

ern, R.R. Co., 219 Pa. 398, 404, 68 Atl. 1014 (1908), it is stated as follows: "An express grant of all the minerals and mining rights in a tract of land is by natural implication the grant also of the right to open and work the mines, and to occupy for those purposes as much of the surface as may be reasonably necessary." In Oberly, et al v. Frick Coke Co., 262 Pa. 80, 89 104 Atl. 864 (1918), it is stated inter alia as follows: "The removal of gas is a necessary incident to the mining of coal in order that mining operations may be carried on with safety. It is one of the implied rights incident to every grant of minerals." In New Charter Coal Co. v. McKee, 411 Pa. 307, 191 A. 2d 830 (1963), it is stated upon page 313 as follows: "Where there is a clear right to deep mine coupled with a waiver of the right to support of the surface one does not have to be a mining expert to deduce that the owner of the coal has the power to sink as many shafts as he chooses and to come as close to the surface as he chooses to dig and remove all and every particle of the coal granted to him, without any responsiblility as to the effect of his operations on the usability of the surface." While the mining rights granted to defendant's predecessor in title do not specifically mention the right of ventilation of the mine in order to remove the poisonous gases and dust, it is clear that this right exists by necessary implication. To permit otherwise would prevent the operation of the mine in compliance with state and Federal regulations. It became necessary to place a shaft and ventilation fan in the vicinity of plaintiffs' property in order to operate the mine and safely remove the coal. Although defendant company had the right to install the fan upon plaintiffs' property, this was not done. This facility was installed upon an adjoining tract one hundred feet north of plaintiffs' prop-

erty line and 450 feet distant from the dwelling house. This defendant coal company had the right to do in the efficient and safe operation of the mine. Plaintiffs' predecessor in title, in connection with the grant of mine rights, specifically released all damages by "releasing and forever discharging the party of the second part, his heirs and assigns, of and from any and all damages to the surface of the land . . . which may result to the party of the first part, his heirs and assigns, by reason of the taking and the removing of said coal." The release is broad in character and covers any damage to the surface of the land and the building and improvements thereon. We conclude that the right to ventilate the mine is inseparable from the right to remove the coal in a safe and efficient manner and that any damage to plaintiffs' property resulting therefrom has been waived and released as a matter of law.

Although it is not necessary to consider plaintiffs' claim for damages under Restatement, Torts, §822 we will briefly consider it. Liability under this section only arises where certain factors are present. The invasion must be substantial and second, the invasion must be intentional and unreasonable. In the opinion heretofore filed, we have considered and discussed these matters. The principal complaint seems to be that the noise is continuous 24 hours a day. The noise does not arise above speaking level and although plaintiffs offered evidence that their land was damaged to the extent of $25,000, this contention is vigorously disputed by defendant's witnesses. In considering the reasonableness of the invasion, the utility of the operation is balanced against the gravity of the harm and the actor must use every reasonable means to avoid the damage which may arise. Defendant did not place the shaft and did not construct the shaft and

place the ventilating fan upon plaintiffs' property which we believe they had the right to do. The installation was made upon adjoining property with the fan pointing away from plaintiffs' property at an additional cost of $21,000. We believe that defendant company made all reasonable efforts to avoid any damage while in compliance with state and Federal law relating to the operation of a coal mine. We believe that the findings of fact by the court were fully justified by the evidence and that, as a matter of law, plaintiffs can recover no damages.

## ORDER

And now, March 25, 1976, the exceptions filed by plaintiffs are overruled and dismissed and judgment is now entered in favor of defendant.