**PITTSBURG & MIDWAY COAL MINING CO., Plaintiff-Appellee,**

v.

**J.C. SHEPHERD, Bowater Incorporated (successor to Hiwassee Land Company), and Amsouth Bank, N.A., Defendants-Appellants.**

No. 89–7455.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1989.

Gray, Espy & Nettles, Isaac P. Espy, Tuscaloosa, Ala., for defendants-appellants.

Andrew P. Campbell, Jack W. Selden, Leitman, Siegal, Payne & Campbell, Birmingham, Ala., William T. Watson, Watson & Harrison, Tuscaloosa, Ala., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, CLARK, Circuit Judge, and SMITH *, Senior Circuit Judge.

CLARK, Circuit Judge:

This appeal concerns a dispute over surface rights between the owners of land (the appellants, Shepherd, et al) and the owners of the minerals in the land (the appellee, Pittsburg & Midway Coal Mining Co., hereafter P & M). In 1912 J.C. Shepherd and his wife conveyed by severance deed to American Trust Company the title to coal and other minerals in the land, along with certain rights to use the surface in the mining of the lands. P & M is successor in title to American Trust Company.

P & M brought suit in the district court to enjoin the surface right owners from interfering with P & M's claimed right to use a part of the surface of the land in its mining operations. The district court granted a temporary injunction and Shepherd appealed to this court. At oral argument the parties stipulated that the temporary injunction could be considered by this court as a final judgment and that our decision in this appeal would finalize the dispute as though the district court's temporary injunction were a permanent one.

The district court's order thus permanently restrains the defendants Shepherd and his lessees (timber owners) from interfering with P & M's use of 9.4 acres located in the North ½ of the Southwest ¼ of Section 33, Township 16 South, Range 10 West, Fayette County, Alabama. That use contemplates entering the property to construct, install, maintain and operate a sediment pond, an access road, a pump site, dams and electrical lines on the 9.4 acres of property.

Reconciliation of the dispute requires an interpretation of the rights granted, and those reserved, in the 1912 deed executed by Shepherd and his wife, the relevant portions of which are as follows: [1]

"... And the undersigned also hereby grants bargains sells and conveys all the timber (except merchantable Timber measuring over six inches in diameter), stone and water upon the said lands necessary or convenient for the development working and mining of the said coal iron ore gas oil and other minerals and ores and the preparation of the same for market and the removal of the same

and also the right of way and the right to build use and operate roads, highways tunnels and canals of any description over and under the same necessary for the convenient transportation of said coal iron ore gas oil and other minerals and ores from said lands *or any other lands:* and the conveying and transporting to

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. This portion of the original handwritten deed is verbatim with no changes in punctuation. The only changes are the division into paragraphs and the italicizing.

and from *said lands or other lands* all materials animals and employees and implements that may be of use in mining and removal of coal, iron ore, gas, oil and other minerals and ores *from said lands or from other lands or in the preparation of the same for market:*

and also the right to construct and use such buildings and structures on said lands as may be necessary or convenient for mining said minerals preparing them for and transporting them to market, for coking coal and carrying on any business of the purchaser or his assigns connected with the mining, preparing and marketing of said coal, iron ore, gas oil and other minerals and ores

and also the right to enter beneath the surface of said lands and mine dig and remove the coal iron ore gas oil and other minerals and ores therefrom to drive and maintain under said lands entries and ways to connect with other lands now owned or hereinafter to be acquired by the purchaser, his grantee or assigns or with mines, entries or ways underlying other lands and to drain and ventilate the same and to remove through or under said lands coal iron ore gas oil and other minerals and ores mined or taken from other lands and premises . . ."

There is no dispute between the parties with respect to the district court's findings of fact. The pivotal issue is whether the use of the surface conveyed by the Shepherds to P & M's predecessor included the use now intended by P & M. But first a little background is in order.

P & M operates its North River No. 1 Mine in Fayette and Tuscaloosa Counties and approximately 6,000 fee and leased mineral acres are dedicated to this mine. The 6,000 acres are contiguous to approximately 80,000 mineral acres in said counties controlled by P & M. In mining and processing coal it is necessary to wash the coal as soon as practicable after it reaches the surface to rid it of clay, pebbles and other attached inert matter. This process results in a by-product called slurry which consists of about 25% sediment and 75% water. To the present time P & M has stored the slurry in a pond adjacent to the coal preparation plant. This pond has now reached its maximum capacity and can no longer be used. P & M now intends to dispose of slurry using a method devised and successfully used by another Alabama mining company. This method involves depositing the residue in abandoned mine tunnels and then pumping the water (which rises to the top of the mixture) into a pond on the surface. To be operational the pond has to be situated over the lowest level of the floor of the underground mines. The 9.4 acres is above the lowest point in the P & M mining operation.

Plaintiffs/appellants contended in the district court and this court that the 1912 conveyance did not include the use proposed here by P & M. Narrowing the issue even further, Appellant Shepherd agrees that P & M could use the surface in this way if the preparation for market involved coal under the acreage described in the 1912 conveyance. Referring to the first separate paragraph of the deed quoted above, one can see that conveyed therein are certain properties and uses that apply only to the land above the coal being mined.

The second paragraph is the key section. Paraphrasing, there is conveyed a right of way and the right to build and use roads, tunnels and canals over the surface for transportation of coal and other minerals from said lands *or any other lands;* and the transporting to and from *said lands* all materials used in mining of coal from said land *or from other lands or in the preparation of the same for market.*

Shepherd argues first that P & M can only use the surface of the N ½ of the SW ¼ of Section 33 in aid of mining coal from beneath that tract. Second, appellants argue that the rights of use conveyed did not embrace the right to use the 9.4 acres for a pond, pump and roads to wash the coal.

■ With respect to the first argument, we agree with appellants statement of law: "The cases are clear, in Alabama, as well as in every other jurisdiction, that a simple

severance, without express grants, gives to the mineral owner no right to use the surface of one tract to aid in the mining of another tract, even though the miner owns the minerals under both". (App. Br. page 8). We agree also with appellant that the Alabama courts do not by implication find such grants. However, here there are specific grants of rights to use the surface of Shepherd's property in connection with mining coal from other lands. In the second paragraph quoted above are the phrases "from said land or any other lands", "from said lands or other lands", and "from said lands or from other lands". Thus the cases such as *Hooper v. Dora Coal Mining Co.*, 95 Ala. 235, 10 So. 652 (1892) and others are not applicable in the construction of the conveyance in question here.

■ Appellants next argue that the right to use the land for the purposes intended by P & M as heretofore described cannot be implied from the rights of use identified in the deed. We turn to *Williams v. Gibson*, 84 Ala. 228, 4 So. 350 (1888) for guidance in deciding to what extent we may imply a right of use that is not expressly set forth in the conveyance:

> .... It is obvious that without the right of surface occupation to some extent the grant in question is rendered nugatory. The principle is well settled that one who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as is reasonably necessary to carry on his mining operations. *Turner v. Reynolds*, 23 Pa.St. 199; *Rogers Taylor*, 38 Eng.Law & Eq. 574; *Railroad Co. v. Railway Co.*, 75 Ala. 524, 525. To construe away this right would be to construe away the grant itself, which cannot be enjoyed without it. It is our opinion that the enumeration of these special privileges was not intended to exclude another which was absolutely necessary to the very life of the grant itself. The right to use timber would not pass by implication. Bainb. Mines, *64. This was, therefore, the acquisition of a new and valuable right. The right of way and water privileges were also more comprehensive, possibly, than would have been yielded pacifically by mere construction. At any rate, these several grants themselves necessarily imply the right to occupy so much of the surface as might be needed to open and work the mines. There could be no use of timber, or water, or right of way, except in connection with working the mines, and there could be no working of the mines without an occupation of the surface in the vicinity of the shafts, slopes, or other requisite openings. These specifications strengthen, rather that repel, the implication in question.

> ....

> These incidental rights of the miner, which are appurtenant to the grant of the mineral rights, are to be gauged by the necessity of the particular case, and therefore vary with changed conditions and circumstances. He may occupy so much of the surface, adopt such machinery and modes of mining, and establish such auxiliary appliances and instrumentalities, as are ordinarily used in such business, and may be reasonably necessary for the profitable and beneficial enjoyment of his property. But he is not limited, as we have already said, to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and of modern invention.

Our study of the conveyance in question and the Alabama caselaw convinces us that the district court was correct in construing the conveyance from Shepherd and his wife to permit P & M's intended use of the 9.4 acres. The appearance in the second paragraph of three phrases enlarging the use by the miner of the surface for the mining of coals "from other lands" and inclusion of the phrase "in the preparation of the same [coal from other lands] for market" permits P & M's intended use of the 9.4 acres. *Williams v. Gibson* and other Alabama cases make clear that where there is broad language describing the rights conveyed it is appropriate to imply a right to use modern technological knowledge in accomplishing that which was intended to be

accomplished in the original conveyance, that is, the mining of coal and the preparation of it for market.

AFFIRMED.